IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 09-150-1 |
| | : | |
| v. | : | CIVIL ACTION NO. 14-1017 |
| | : | |
| MAHLI GRAY | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                          December 19, 2014

       Petitioner Mahli Gray asks this Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. Gray argues his counsel was ineffective because he (1) failed to inform Gray of his right to testify at trial, (2) waived Gray's right to testify, (3) failed to investigate and call to the stand a particular defense witness, and (4) failed to move to dismiss the indictment for lack of jurisdiction. Because the record conclusively shows Gray is not entitled to relief on any of these claims, his motion will be denied.

**FACTS**

       On October 22, 2008, at approximately 2:40 a.m., two Philadelphia police officers stopped Gray in his car for driving through a stop sign without stopping. Gray was operating the vehicle, and a female passenger was sitting in the front passenger seat. The two police officers who initiated the traffic stop were in full uniform and driving a marked police car.

       While approaching Gray's vehicle, the officers observed Gray making furtive movements beneath his seat and instructed him to keep his hands in plain view. He did not comply at first, but eventually he raised his hands. One of the officers approached Gray's side of the car and requested his license and registration, but Gray could not produce either. The officers decided to have the automobile towed for these infractions pursuant to the City's "Live Stop" program and

asked Gray to exit the vehicle, which he did.[1] Before the vehicle was towed, one of the officers searched it and recovered a fully loaded 9 millimeter handgun from beneath the driver's seat, the same area officers had observed Gray reaching into as they approached the vehicle. The officers then arrested Gray and asked the female passenger to exit the vehicle. One of the officers searched the female passenger and, after finding no weapons on her, permitted her to leave.

Because Gray had previous convictions for crimes punishable by imprisonment for a term exceeding one year, he was indicted for one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On July 29, 2010, a jury found Gray guilty, and on May 25, 2011, this Court sentenced him to 210 months' imprisonment, followed by five years of supervised release. On January 24, 2013, the Court of Appeals for the Third Circuit summarily affirmed Gray's conviction.

On February 11, 2014, Gray filed a pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. In his motion, Gray claims he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel: (1) failed to advise him of his right to testify at trial; (2) subsequently waived Gray's right to testify; (3) failed to investigate and call to the stand a particular defense witness; and (4) failed to move to dismiss the indictment for lack of jurisdiction.

---

[1] "Live Stop" is a Philadelphia Police Department program that enforces provisions of the Pennsylvania Vehicle Code. *See* 75 Pa. Cons. Stat. Ann. § 6309.2(a)(1). Pursuant to this program, the police may immobilize or impound a vehicle if the officers determine the operator has violated certain state driving laws, including driving an unregistered vehicle or driving without a license. *See id.*; *see also* Philadelphia Police Department, Citizen Information Bulletin #2, "Live Stop" Program, *available at* http://www.phila.gov/pac/PDF/CB2_Live_Stop_Program.pdf (last visited Dec. 19, 2014).

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected if it was imposed in violation of the Constitution or laws of the United States, or is otherwise subject to collateral attack. Relief may be granted only if an error of law or fact occurred and if such error constitutes a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A defendant who seeks habeas relief based on a claim of ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland v. Washington* by showing (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). As to the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and to be considered deficient, counsel's performance must fall below "an objective standard of reasonableness" when measured against "professional norms." *Id.* at 688-89. To establish the second prong—prejudice—a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. An error by counsel, even if unreasonable, does not "warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, the court considers "a verdict or conclusion only weakly supported by the record . . . more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. A failure to make a showing of either prong defeats the ineffectiveness claim, and therefore, a court may address the prejudice prong before evaluating whether or not the attorney's performance was

deficient. *See id.* at 700; *see also id.* at 670 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").

Gray's first two claims are that his counsel failed to notify him of his right to testify at trial and waived that right without his permission. The right to testify is personal and can be waived only by the defendant, not defense counsel. *See United States v. Pennycooke*, 65 F.3d 9, 10 (3d Cir. 1995). If the defendant does waive his right to testify, the waiver must be knowing, voluntary, and intelligent. *Id.* at 11. It is the responsibility of defense counsel to inform the defendant of the nature and existence of the right to testify and that the right is solely his to invoke or waive. *Id.* at 13; *see also United States v. Vorasingha*, No. 10-3211, 2014 WL 2048170, at *6 (E.D. Pa. May 16, 2014); *United States v. Lore*, 26 F. Supp. 2d 729, 737 (D.N.J. 1998), *vacated on other grounds*, 928 F.2d 1470 (1991). When a defendant "is represented by counsel throughout the trial . . . the court is entitled to—indeed should—presume that the attorney and the client have discussed [the client's right to testify]." *Pennycooke*, 65 F.3d at 12; *see Martinez v. Wynder*, No. 06-4453, 2007 WL 1725189, at *5 (E.D. Pa. June 12, 2007). The Third Circuit has declined to require trial courts to explain the right to testify or to verify that a non-testifying defendant has waived this right voluntarily, and in fact has posited that, as a general rule, a court should not inquire as to the defendant's waiver of this right. *See Pennycooke*, 65 F.3d at 11 ("The fact that a criminal defendant . . . reasonably could choose either to testify or not to testify, necessarily means the determination of whether the defendant will testify is an important part of trial strategy best left to the defendant and counsel without the intrusion of the trial court, as that intrusion may have the unintended effect of swaying the defendant one way or the other.").

Gray claims that had counsel made him aware of his right to testify, he would have exercised that right and testified the windows of the car he was driving when police stopped him were tinted and the police could not have seen his movements as they approached the vehicle.[2] He asserts that had he testified, the result of the trial would have been different, i.e., he would have been acquitted, presumably because the only evidence linking him, and not the passenger who was also in the car, to the gun was the suspicious movements the police officers allegedly observed Gray make as they approached the vehicle. Even if Gray could satisfy the first part of the *Strickland* test by showing his counsel failed to inform him of his right to testify and/or improperly waived that right,[3] Gray's claims fail for lack of prejudice.

---

[2] To support this claim, Gray submitted an affidavit from his brother dated "this 2 day of 7 2014," stating that on October 22, 2008, "at approximately 7:15 my brother and I took his car (the Chevy Impala) to get the car window tinted at one of my regular visited car place." Pet'r's Mem. Ex., ECF No. 77 at 38. However, the police stopped Gray in his car at 2:00 a.m. on October 22, 2008, and then had the car towed. Therefore, it is unlikely that Gray's brother was in possession of the car at 7:15 (either a.m. or p.m.) that day. Even if his brother did possess the car and have the windows tinted, the tinting would have occurred after Gray's arrest.

[3] The Court need not address the first prong of the *Strickland* test regarding defense counsel's performance, but notes Gray arguably fails to rebut the presumption his attorney discussed his right to testify with him and Gray knowingly waived that right. During a pretrial conference, which Gray attended, this Court heard argument on several motions in limine in which the Government sought a ruling permitting it to introduce into evidence three of Gray's previous criminal convictions, Gray's proffer statements, and recorded telephone conversations made by Gray from prison. Because the Government represented it would only use this evidence in a rebuttal case if Gray testified, the Court reserved ruling on these motions and noted repeatedly that the admissibility of this evidence depended on whether Gray took the witness stand. Trial Tr. 1.3, 1.7-1.9, July 28, 2010. Defense counsel expressly acknowledged there was a possibility Gray might testify at trial, stating "It is our position that [Gray] may not—he—he will not testify, but certainly, things can occur at trial . . . ." *Id.* at 1.8. Gray did not object at any time during this exchange, nor does he assert in his § 2255 motion that he had expressed his desire to testify at the trial during any of the subsequent proceedings in this case. *See El-Tabech v. Hopkins*, 997 F.2d 386, 389 (8th Cir. 1993) ("[Defendant's] conduct during trial and at the conference with the judge impugns his contention that he persisted in his wish to testify throughout trial."); *Lore*, 26 F. Supp. 2d at 737 ("[A] presumption of waiver arises with a defendant's silence and implicit assent to his lawyer's tactical decision not to have him testify." (citing *United States v. Martinez*, 883 F.2d 750 (9th Cir.1989))).

First, the officers would have discovered the gun even if they did not observe Gray's suspicious movements inside the car. Gray provided the officers with unsatisfactory answers about the ownership of the car, and he was unable to produce a driver's license or any paperwork for the vehicle. The officers' decision to tow the car and to perform an inventory search of the car before it was towed was not a result of Gray's movements inside the car, but rather stemmed from Gray's violations of the vehicle code.[4] The real issue is whether there is a reasonable

---

The Court recognizes a defendant is unlikely to unilaterally interrupt courtroom proceedings and declare his desire to testify, and the Court therefore hesitates to infer either an understanding or a waiver of the right to testify solely from Gray's silence. *See Lore*, 26 F. Supp. 2d at 737-38. In this case, however, Gray was clearly aware there was a possibility he might testify at the trial. Given this understanding and his silence, it seems likely he knew he had a right to testify and any waiver of this right was knowing and voluntary.

Further, assuming Gray was made aware of his right to testify and his attorney encouraged him not to exercise that right, the record demonstrates this advice was sound legal strategy. Strategic decisions made by defense counsel are presumptively reasonable. *See Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) ("*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by *post-hoc* determinations that a different trial strategy would have fared better."); *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998) (explaining that courts are to "accord counsel's strategic trial decisions great deference"). To overcome the presumption that a challenged action is sound trial strategy, a habeas petitioner must show either "(1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005). Had Gray testified, he would have run the risk that his three previous criminal convictions, his admissions during the proffer, and his recorded telephone conversations would have been entered into evidence. This evidence could have materially and adversely impacted Gray's defense, and it was a strategic decision for Gray not to testify so as to avoid this risk. Any strategic error made by counsel in his recommendation that Gray not testify did not result in a complete miscarriage of justice and was within the range of professionally reasonable judgment under the circumstances.

[4] The officer who initially approached Gray in the car stated that after Gray finally complied with his repeated direction to show his hands, the officer holstered his weapon and asked Gray for his license and registration. Trial Tr. 2.29, July 29, 2010. The officer testified his intent at that time was "just to see if he had his proper paperwork. We, actually, was gonna give him a warning and let it go." *Id.* The officer explained, however, that as the stop continued the situation escalated; Gray had no license, no insurance, and no registration. *Id.* at 2.30. Based on the fact Gray had no paperwork for the vehicle, the officer decided to impound the vehicle pursuant to the Live Stop program; he asked Gray to exit the vehicle and the officer performed an inventory search of it.

probability the jury, in light of Gray's testimony that the windows were tinted, would still have associated Gray with the weapon, rather than his passenger.[5] Given the other evidence in the case, the Court finds it is not reasonably probable the result of the trial would have been different even if Gray testified.

Two Government witnesses, including one of the arresting officers, testified the car windows were not tinted on the day of Gray's arrest, completely contradicting Gray's assertions. Even if the jury believed Gray's testimony that the windows were tinted, however, the jury would not necessarily have concluded that the officers could not see inside the car. One of the arresting officers, after stating he was not sure if the windows were tinted or not, testified "Being as though it was—it was nighttime and because of the—of the spotlight from our car because of the lights on our car and because of the streetlights, the street dome lights, it still was a well-lit area. You could still see who was in the car." Trial Tr. 2.71, July 29, 2010. The second arresting officer, who testified the car windows were not tinted, *id.* at 2.177, confirmed she could see clearly inside the car while she was still in the police vehicle, *id.* at 2.170. Lastly, even if the jury did not believe the officers could see Gray's movements from outside the car, the gun—which would have been discovered even if Gray immediately obeyed the officers' commands and did not reach under his seat—was found underneath the driver's seat in a car associated with Gray,[6]

---

*Id.* at 2.31-2.33. During the search, the officer discovered a gun on the floor by the driver's seat, and his partner immediately placed Gray under arrest. *Id.* at 2.33-2.34.

[5] In his closing argument, defense counsel asserted the other passenger in the car could have placed the gun under Gray's seat when the police were questioning Gray, either before or after he exited the vehicle. Trial Tr. 2.211, July 29, 2010. The police asked the passenger to exit the vehicle only after they discovered the gun. *Id.*

[6] A Government witness testified that on October 21, 2014, the day before Gray's arrest, he was going to sell the car to Gray, but it was too late in the day to complete the paperwork. Trial Tr. 2.123, July 29, 2010. The witness gave the keys to Gray and told him to come back in the

7

which Gray was driving at the time. The jury's verdict against Gray was strongly supported by the record, and Gray's testimony about the tint on the windows does not make it reasonably probable the outcome of the proceeding would have been different.[7] Accordingly, the Court will deny Gray's first and second claims.

In his third claim, Gray argues defense counsel was ineffective for failing to call Brittany Collins as a defense witness. Gray asserts Collins was "an eyewitness to the events that occurred that night." Pet'r's Mem. 20. Gray claims Collins would have testified that the vehicle's windows were tinted and Gray was not moving when the officers approached the vehicle. He explains Collins "told trial counsel all of this," and his counsel knew she was willing to testify. *Id.* However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective" and "strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." *Strickland*, 466 U.S. at 681. If counsel's judgments are reasonable and the strategy based upon those judgments represents a reasonable choice, "counsel need not investigate lines of defense that he has chosen not to employ at trial." *Id*. at 681; *see also Berryman v. Morton*, 100 F.3d 1089, 1101 (3d Cir. 1996) ("An attorney need not fully investigate every potential avenue if he or she has reasonable grounds for not doing so."); *Moore v. Beard*, No. 05-0828, 2014 WL 4231248, at *10 (M.D. Pa. Aug. 26, 2014)

---

morning to complete the sale. *Id.* This witness was not aware that Gray used the vehicle later that night. *Id.*

[7] Gray also asserts his attorney erred in failing to call a defense witness to testify to the exact same thing Gray claims he would have testified to—that the windows were tinted and he was not reaching under his seat. As explained below, even if both Gray and this witness testified, there is not a reasonable probability Gray would have been acquitted, especially in light of the fact the gun was in Gray's car under his seat.

("Ineffective assistance of counsel claims grounded in an alleged failure to call an important, exculpatory witness demand an additional layer of deference to trial counsel's strategy.").

Here, defense counsel directly spoke with Collins, and he was in a position to evaluate her credibility with the jury and make a decision based on his observations. There is a range of possible reasons that he may have had for not calling Collins as a witness. Because this Court's scrutiny of defense counsel's strategic decisions must be highly deferential, Gray has failed to establish that counsel's performance was deficient under the first prong of the *Strickland* test, and his third claim will be denied. Even if the failure to call Collins fell below an objective standard of reasonableness, Gray also fails to satisfy the second prong of the test. Gray represents that Collins would testify to the exact same thing he would have testified to—the windows of the car were not tinted at the time of arrest and he was not making suspicious movements. As explained above, given the weight of the evidence against Gray, there is not a reasonable probability that if Collins, or even both Collins and Gray, had testified, the result of the trial would have been different.

Gray's fourth claim is that his defense counsel was ineffective for failing to move to dismiss the indictment for lack of jurisdiction because the statute under which he was convicted was unconstitutional. The Court of Appeals for the Third Circuit has found that the felon-in-possession statute, 18 U.S.C. § 922(g)(1), is constitutional. *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001). The Government therefore had proper authority to prosecute Gray, and this Court had jurisdiction to preside over Gray's case. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."). Gray's claim thus fails under both prongs of the *Strickland* test. First, failing to raise a meritless defense does not constitute a deficient performance. *See United States v.*

9

*Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("Counsel cannot be ineffective for failing to raise meritless claims, and counsel's strategic choices are reviewed with a strong presumption of correctness." (citing *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996))). Even if defense counsel raised this defense, the outcome of the proceedings would have been the same because the statute is constitutional and the Court and the Government had jurisdiction. Gray's fourth claim will be denied.

The Court will also deny Gray's request for an evidentiary hearing. When a § 2255 motion is filed, a district court must "grant a prompt hearing" and "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In this case, the record conclusively shows Gray is not entitled to any relief. *See Machibroda v. United States*, 368 U.S. 487, 495 (1962) (holding § 2255 does not require "that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be"); *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition." (quoting *Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008))).

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.